UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **FRANK R. FITZGERALD** | * | **CIVIL ACTION NO. 05-1741** |
| **VERSUS** | * | **MAGISTRATE JUDGE HILL** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **BY CONSENT OF THE PARTIES** |

## REASONS FOR JUDGMENT

The undersigned was referred this social security appeal by consent of the parties. For the reasons set forth below, the Commissioner's decision is **AFFIRMED,** and this action is **DISMISSED WITH PREJUDICE**.

## Background

The claimant, Frank Fitzgerald ("Fitzgerald"), born March 6, 1963, filed applications for disability insurance benefits and supplemental security income on December 2, 2003 based lower back pain, hepatitis A, B, and C, throat problems, and hand numbness. He had a obtained a GED certificate, and had past relevant work experience as a construction worker.

The records reflect that Fitzgerald was treated by Dr. William Bernard for complaints of back and knee pain from March 7, 2001 to October 13, 2004, for which he was prescribed Lortab. He was also seen at UMC between December 3, 2002 to

December 12, 2003, when he complained of low lumbar and right leg pain, and a history of hepatitis C. The assessment was lumbar pain with right leg paresthesias, hepatitis C and persistent hoarseness. He failed to show for several appointments.

At a Consultative Examination by Dr. Robert Wood on February 21, 2004, Fitzgerald complained of low back pain with radiating pain down his right leg and numbness in his toes, in the top of his foot, and the outer part of his leg. He also reported hand numbness. Additionally, he said that he had weekly headaches lasting for two or three days, from which he got some relief from Hydrocodone.

Fitzgerald stated that he could dress and feed himself, stand for one hour at a time, walk for one block on level ground, sit for 30 minutes at one time, lift 50 pounds, and drive. He said that he could perform household chores, but that it took time to do them. He reported difficulty sweeping, mopping, vacuuming, cooking, doing dishes, climbing stairs, and mowing grass.

On examination, Fitzgerald was 74 inches tall and weighed 205 pounds. His blood pressure was 161/85.

Claimant ambulated without difficulty. He could get on and off of the examination table with mild difficulty, and used assistance from the doctor to get off of the table. He could dress and undress himself.

On spinal examination, Fitzgerald had positive Phalen's and Tinel's tests. He had 1+ deep tendon reflexes in the upper and lower extremities. He had normal pulses, bilateral dorsalis pedis and bilateral radial. He had no clubbing, cyanosis, or edema.

Fitzgerald's gait was normal. Grip strength was 5/5. He had normal fine and gross manipulation, and normal finger-to-thumb. He had no atrophy of any musculature or deformity of any joints.

Range of motion on cervical lateral flexion was decreased to approximately 20 to 30 degrees, with decreased flexion to the right. Straight leg raises were negative while sitting, but positive on the right leg while lying. (Tr. 138). Fitzgerald could lie straight back on the table without difficulty. He could walk on his heels, squat, and walk on his toes. He had no varices or ulcerations.

Motor exam was 5/5 throughout. Fitzgerald appeared to have some numbness to light touch of the right leg in the L5-S1 distribution. Cerebellar examination revealed no tremor or nystagmus. Cranial nerves were grossly intact. Deep tendon reflexes were normal and symmetrical.

Dr. Wood's impression was low back pain with radiculopathy. He opined that no assistive device was required. He noted that Fitzgerald's history was somewhat consistent with possible carpal tunnel syndrome, although he might have some type

of cervical lesion leading to the numbness of his hands. However, Dr. Wood observed that claimant had no objective loss of strength or loss of sensation in his hand.

At the Residual Functional Capacity ("RFC") Assessment dated March 10, 2004, the examiner determined that Fitzgerald could lift 20 pounds occasionally and 10 pounds frequently; stand/walk and sit about 6 hours in an 8-hour workday; had unlimited push/pull ability, and could occasionally perform all postural activities, except for climbing ladders, ropes, or scaffolds.

An MRI of the lumbar spine taken at UMC on March 19, 2004 showed posterior disc bulges at L4-L5, L5-S1, compressive disc disease at L5-S1, and arthritis of the posterior joints causing lateral stenosis at L4-5 and L5-S1. The MRI did not show definite nerve root impingement or a herniated disc.

Fitzgerald was treated at UMC again on May 21, 2004, for complaints of low back pain with right leg pain and numbness  On November 24, 2004, he was seen for Hepatitis C and B. He was still drinking alcohol, and stated that he would quit. He was rescheduled for six months later.

Subsequently, Fitzgerald was treated by Dr. William Dupon on November 30, 2004, for cracked and chapped skin on his hands with fissures in the creases. The assessment was low back pain, muscle spasms, and contact dermatitis. He was

prescribed Lortab and Diprolene ointment.

In the last record from Dr. Dupon dated January 12, 2005, Fitzgerald complained of back and right elbow pain. On examination, he had low back paraspinal muscle spasm. The assessment was pharyngitis, arthritis, and low back pain. He was prescribed Voltaren, Bactrim DS, and Lortab.

At the hearing on February 1, 2005, Fitzgerald reported that he had had back surgery in 1995. He also had throat problems. Additionally, he testified that he had hepatitis A, B, and C.

Fitzgerald testified that the hepatitis made him tired all of the time. He also complained that his throat had been hurting. He reported that his back caused his leg to go out, which made him fall and urinate on himself. He stated that he could not move without crying because of the pain.

Additionally, Fitzgerald said that he had numbness in his hands, which caused him to drop things. He also reported that he had been really depressed. He stated that he had stopped drinking.

**Law and Opinion**

On appeal, Fitzgerald argues that the ALJ erred: (1) in finding that he could return to work; (2) in failing to accord proper weight to the treating physicians' opinions that he had a long history of lower back pain and numbness in his right leg

which caused him to fall without warning; (3) in failing to find that he should be found disabled from his past work based on the medical guidelines at step 5, and (4) in failing to find him disabled under the listings at 1.00B2b, 1.02A and 1.04C.

Initially, Fitzgerald asserts that the record does not support the ALJ's conclusion that he could return to work as he did customarily. Specifically, he argues that because of his back pain and problems, he frequently fell and urinated on himself, which would render him unable to return to his past work. (rec. doc. 24, p. 4).

However, the ALJ found that Fitzgerald could return to light work, not his past heavy work as a construction worker. (Tr. 16). In any event, the record does not support Fitzgerald's claim that his leg gave out and that he urinated on himself. At the consultative examination by Dr. Wood, claimant ambulated without difficulty, had normal gait, and had normal motor exam throughout of 5/5. (Tr. 136-38). Dr. Wood opined that no assistive device was required. (Tr. 138). There is simply no evidence, other than Fitzgerald's subjective testimony, to support this allegation. It is well established that subjective complaints of pain must be corroborated by objective medical evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (citing *Houston v. Sullivan,* 895 F.2d 1012, 1016 (5th Cir.1989)).

Additionally, the record reflects that Fitzgerald missed several appointments at UMC. (Tr. 110-16, 135). Further, despite his doctors' orders regarding his hepatitis, he continued to drink alcohol. (Tr. 149). It is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 404.1530(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990). As the ALJ's finding as to claimant's ability to return to work is supported by the evidence, it is entitled to considerable deference.

Next, Fitzgerald argues that his treating physicians' opinions should have been given greater weight in the ALJ's decision. (rec. doc. 24, p. 5). It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Newton*, 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)). Even though the opinion and diagnosis of a treating physician should be afforded

considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." *Id*. (citing *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Id*.

In this case, the record reflects that the ALJ considered all of the medical evidence of record, including those from claimant's treating physicians at UMC. (Tr. 15). While the record shows that claimant was treated for complaints of pain, none of his physicians had indicated that his impairments were disabling. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (substantial evidence supported ALJ's finding that claimant could perform a wide range of sedentary work where no physician who examined her pronounced her disabled). Accordingly, this argument lacks merit.

Finally, claimant argues that he meets the listings at 1.02A, 1.00B2b and 1.04C. Section 1.02A provides, in pertinent part, as follows:

> *Major dysfunction of a joint(s)*: Characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).
> With:

****

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

Section 1.00B2b provides, in pertinent part, as follows:

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Section 1.04C provides, in pertinent part, as follows:

*Disorders of the spine*: (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease,

facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.

With:

\*\*\*

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.02A, 1.00B2b and 1.04C.

The medical records reflect that Fitzgerald does not meet any of these listings. As to §§ 1.02A and 1.00B2b, there is no objective evidence that claimant has an inability to ambulate. In fact, Dr. Wood found that claimant ambulated without difficulty, had normal gait, had a normal motor exam, and required no assistive device. (Tr. 136-38). Regarding § 1.04C, the latest MRI showed no definite nerve root impingement or a herniated disc. (Tr. 152). For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. (emphasis in original). *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990). An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Id*. As claimant has not demonstrated that he met the criteria under §§ 1.02A, 1.00B2b and 1.04C, his argument lacks merit.

Furthermore, the record fully supports the finding of the ALJ that claimant was

10

able to return to light duty work, at least.

Based on the foregoing reasons, it is ordered that the Commissioner's decision is **AFFIRMED,** and this action is **DISMISSED WITH PREJUDICE**.

Signed this 23rd day of February, 2007, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE